## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| STEPHANIE HINDSMAN | : CIVIL ACTION |
| | : |
| v. | : |
| | : NO. 17-3612 |
| NANCY A. BERRYHILL | : |

## MEMORANDUM

**KEARNEY, J.**                                                    **September 24, 2018**

After the Social Security Administration considered her disabled for most of her childhood, Stephanie Hindsman believes she remains disabled as a young adult and is entitled to disability benefits under federal law. She claims she cannot work as a young adult because of post-traumatic stress disorder, bipolar disorder, mood disorder, borderline personality disorder, a specific learning disability, and borderline intellectual functioning. An Administrative Law Judge, after considering and citing substantial evidence, disagreed and the Acting Commissioner of the Social Security Administration, Nancy A. Berryhill,[1] later denied her claim for Supplemental Security Income disability benefits as a young adult. For good or bad, our society entrusts these credibility determinations to administrative law judges and the Social Security Administration so long as they consider the competent evidence and explain the specific reasons for their decision. Under our present protocol, both Judge Heffley and we have carefully evaluated Ms. Hindsman's records and proffered testimony; she undoubtedly faces several challenges as a young adult and we could see how a fact finder may determine she remains disabled as a young adult. But after extensive review, we cannot find error in the Administrative Law Judge's credibility findings as to her moderate or mild limitations or ability to work based on the cited substantial evidence as further described in Judge Heffley's Report and

Recommendation. After independently reviewing the Administrative Record, we find the Commissioner properly found Ms. Hindsman is not disabled under the governing federal law and dismiss her case.

## I. Background

Stephanie Hindsman is currently twenty-seven years old with an eleventh-grade education. On November 18, 2005, shortly before her fourteenth birthday, Ms. Hindsman's mother applied for disability benefits on her behalf.[2] The application identified December 3, 2003 as the date Ms. Hindsman's disability began.[3] The Social Security Administration (the "Agency") approved benefits for Ms. Hindsman as a disabled child effective September 1, 2005 with a diagnosis of attention deficient hyperactivity disorder and oppositional defiance disorder.[4]

The Agency redetermined Ms. Hindsman's eligibility for benefits when she reached age eighteen.[5] After consideration, the Agency notified Ms. Hindsman on January 20, 2011 it no longer considered her eligible to receive disability benefits.[6] Ms. Hindsman requested reconsideration, contending she is disabled and unable to work.[7] On August 23, 2012, a disability hearing officer found Ms. Hindsman able to work and denied her benefits.[8]

At Ms. Hindsman's request, Administrative Law Judge ("ALJ") John M. Fitzpatrick scheduled a hearing on September 30, 2013.[9] ALJ Fitzpatrick postponed the hearing at Ms. Hindsman's request so she could retain an attorney.[10] ALJ Fitzpatrick scheduled a second hearing for January 15, 2014.[11]

At the January 15, 2014 hearing, Ms. Hindsman testified she is disabled because she is "not a people person" and, although she would like a job, she is unable to work because she has arthritis, becomes nervous around people and "shut[s] down," meaning she "pause[s]," and has an anger problem.[12] Vocational expert Dr. Steve Gumerman testified at the January 15, 2014

hearing. Dr. Gumerman testified Ms. Hindsman could perform unskilled, light jobs such as a packer or sorter.[13] On February 28, 2014, ALJ Fitzpatrick denied Ms. Hindsman's application, finding her disability ended January 1, 2011 and did not become disabled again since that date.[14]

Ms. Hindsman appealed from ALJ Fitzpatrick's February 28, 2014 opinion to the Appeals Council. The Appeals Council denied Ms. Hindsman's request for review.[15] Ms. Hindsman sued the Commissioner in this Court and, upon consideration of the Commissioner's uncontested motion for remand, the Honorable J. Curtis Joyner remanded to the Commissioner for further administrative proceedings on April 12, 2016.[16]

On remand, the Appeals Council ordered the ALJ provide Ms. Hindsman the opportunity to update the record with medical evidence; provide her access to the record; admit evidence into the record and provide an exhibit list; obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on her occupational base, including hypothetical questions to reflect the specific capacity and limitations established by the record as a whole; the ALJ must ask the vocational expert to identify examples of appropriate jobs and the incidence of jobs in the national economy and identify; and other requirements.[17] The Agency appointed Ms. Hindsman counsel, notified Ms. Hindsman of the hearing process, and requested an authorization for the release of additional information.[18] The Agency notified Ms. Hindsman of a new hearing to be held January 26, 2017 before ALJ Sandra Morales-Rosa.[19]

ALJ Morales-Rosa held a hearing on January 26, 2017. Experienced disabilities attorney Claire Grandison represented Ms. Hindsman.[20] On April 13, 2017, ALJ Morales-Rosa issued her decision finding Ms. Hindsman's disability ended on January 1, 2011, she has not been disabled since, and denied her application for benefits.[21]

On August 8, 2017, Ms. Hindsman filed this case seeking judicial review under 42 U.S.C.

3

§405(g) of ALJ Morales-Rosa's April 13, 2017 decision. We referred the case to the Honorable Marilyn Heffley, United States Magistrate Judge, for a report and recommendation.[22] On August 30, 2018, Judge Heffley recommended we deny Ms. Hindsman's request for review.[23] Ms. Hindsman timely objected to Judge Heffley's Report and Recommendation.[24] The United States responded to Ms. Hindsman's objections.[25]

## II. Analysis

Ms. Hindsman argues we should not adopt Judge Heffley's Report and Recommendation. She argues Judge Heffley erred in finding ALJ Morales-Rosa (1) did not err in her evaluation of Ms. Hindsman's mental impairments because Judge Heffley ignored the ALJ's legal errors in failing to discuss non-medical evidence (school records) as required, improperly weighed evidence, and incorrectly defined the ability to adapt or manage oneself; (2) did not err in relying on testimony of the vocational expert because, under case law from this District, the ALJ's hypothetical to the vocational expert did not include all limitations supported by the evidence; and (3) did not violate legally binding policies in Social Security Ruling 11-2p because Judge Heffley ignored the requirement the ALJ must consider all non-medical evidence, including school records, and because the ALJ did not examine the functional effects of Ms. Hindsman's cognitive impairments and did not evaluate how she would be expected to function in the absence of extra help and accommodations. Ms. Hindsman contends the ALJ's decision is not supported by substantial evidence and is replete with legal errors and must be reversed and remanded to the Commissioner.

We conduct a *de novo* review of Ms. Hindsman's objections.[26] We "may accept, reject, or modify, in whole or in party, the findings or recommendations made" by Judge Heffley.[27] By contrast, our review of ALJ Morales-Rosa's final decision is deferential and her findings of fact

4

.

are conclusive if supported by substantial evidence.[28] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[29] "Substantial evidence is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'"[30] To determine whether substantial evidence supports a factual finding, we review the record as a whole.[31] We do not re-weigh evidence; where the ALJ's findings of fact are supported by substantial evidence we are bound by them even if we would have decided the matter differently.[32]

## A. Social Security Act and implementing regulations.

An ALJ must determine whether the claimant is disabled when examining a challenge to the Commissioner's initial decision denying benefits. Under Title XVI of the Social Security Act ("Act"), a disabled person may be entitled to supplemental security income.[33] A disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[34] A claimant is only disabled if her impairments are severe to the point it makes her previous work impossible to do or precludes any other kind of substantial gainful work available in the national economy.[35]

The Commissioner applies a five-step evaluation to determine if a claimant is disabled.[36] If the Commissioner finds disability or non-disability at any step during the analysis, the Commissioner will end the analysis.[37] Under step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity.[38] If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two and is required to determine whether the claimant is suffering from a severe impairment or combination of impairments.[39]

5

Under step three, if the claimant's impairments are severe, the Commissioner compares the impairments to a list of impairments presumed severe enough to preclude gainful employment.[40] If the claimant's impairments or its equivalent matches a listed impairment, the claimant is presumed disabled.[41] If the claimant's impairments do not match impairments on the list, the Commissioner proceeds to step four where the Commissioner determines the claimant's residual functional capacity ("RFC").[42] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[43] In step five, if the claimant is unable to return to past work, the Commissioner must prove "there are other jobs existing in significant numbers in the national economy which claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC]."[44]

### A. ALJ Morales-Rosa's decision denying disability benefits.

After reviewing the record evidence, ALJ Morales-Rosa applied the five-step evaluation and found Ms. Hindsman is not disabled under the Act. Step one is not applied in this case because it is not used for re-determining disability at age eighteen.[45]

At step two, ALJ Morales-Rosa determined Ms. Hindsman suffers from several severe impairments: history of learning disorder or borderline intellectual functioning; mood disorder, not otherwise specified; borderline personality disorder; and post-traumatic stress disorder.[46]

At step three, ALJ Morales-Rosa considered Ms. Hindsman's mental health evaluation and treatment reports, and found her impairments do not meet or equal the criteria of Listings 12.04 (depressive, bipolar, and related disorders), 12.11 (neurodevelopment disorders), or 12.15 (trauma and stressor-related disorders). Criteria "B" in Listings 12.04, 12.11, and 12.15 all require evidence supporting extreme limitation of one, or marked limitation of two, in the areas of (1) understand, remember, or apply information; (2) interact with others; (3) concentrate,

6

persist, or maintain pace; and (4) adapt or manage oneself.[47] As to Criteria "C" of Listings 12.04 and 12.15, the ALJ found the evidence did not establish Ms. Hindsman has a medically documented history of mental disorder over a period of at least two years with evidence of both (1) "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder" and (2) "marginal adjustment, that is, minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life."[48]

At step four, ALJ Morales-Rosa considered all the medical evidence and concluded Ms. Hindsman has a residual functional capacity to perform work activity at all exertional levels, restricted to performing simple, routine tasks and limited to make simple work-related decisions, with occasional interaction with supervisors and co-workers, but never with the public.[49]

At step five, the ALJ considered Ms. Hindsman's age, education, work experience, and residual functional capacity and found there are a significant number of jobs in the national economy she can perform, including as a hand packer, bakery racker, and artificial flower sticker.[50] After applying the five-step evaluation, ALJ Morales-Rosa determined Ms. Hindsman is not disabled under the Act.[51]

## B. We overrule Ms. Hindsman's objections.

We address each of Ms. Hindsman's three objections to Judge Heffley's Report and Recommendation. Ms. Hindsman's first objection contains three parts: she contends the ALJ "committed legal error" by failing to discuss school records in her decision; failed to properly weigh evidence in two areas of Criteria "B" of the relevant Listings; and incorrectly defined another area of Criteria "B". Ms. Hindsman next objects to the ALJ's hypothetical posed to the vocational expert because it did not include limitations regarding concentration, persistence, or

pace as supported by the evidence. Ms. Hindsman lastly objects to ALJ's failure to consider school records required by Social Security Ruling 11-2p. After careful analysis of these objections and *de novo* review of the ALJ's findings, we adopt Judge Heffley's Report and Recommendation and find, constrained by the existing federal law, Ms. Hindsman is not presently entitled to disability benefits.

## 1. ALJ Morales-Rosa's assessment of Ms. Hindsman's mental impairments is supported by substantial evidence.

Ms. Hindsman argues the ALJ failed to discuss school records when applying the "understand, remember, or apply information" area and failed to provide adequate evidence of how she weighed evidence on the "interact with others" area of Criteria "B" of the relevant Listings.

### *School records applied to the "understand, remember, or apply information" area of Criteria "B".*

Ms. Hindsman argues the ALJ's failure to discuss school records runs afoul of our court of appeals' holding in *Cotter v. Harris* which requires an ALJ's decision to "be accompanied by a clear and satisfactory explication of the basis on which it rests."[52] Ms. Hindsman argues the ALJ failed to discuss school records at any point in her decision, including the ALJ's determination of the "understand, remember, or apply information" area of Criteria "B", one of the four Criteria "B" areas of mental functioning. Ms. Hindsman objects the ALJ's decision mentions only "special education services" without explaining the type or degree of such services. Ms. Hindsman points to school records from eleventh grade showing her reading at the fourth grade level and her math at the seventh grade level evidencing a deficit in learning the ALJ failed to mention; accommodations and extra help provided by the school to support her functioning; and records of several failing grades showing, even with extra help and

8

accommodations, an inability to learn and make adequate progress.

In addition to the ALJ's failure to discuss school records, Ms. Hindsman contends the ALJ failed to analyze how other mental impairments limited her ability to understand, remember, and apply information. Ms. Hindsman points to school records showing emotional needs in addition to cognitive deficits contributed to her need for special education, and records showing significant behavioral issues including anxiety, depression, aggression, conduct problems, threatening others, tantrums, and comments wishing she were dead. Ms. Hindsman points to a January 2010 evaluation showing she "frequently gets into fights with family [and] in school."[53] Ms. Hindsman also points to the ALJ's apparent inaccuracy by stating in one part of her analysis Ms. Hindsman has a high school education while in another part of her analysis acknowledges she attended high school only through eleventh grade.

Ms. Hindsman argues the ALJ's failure to consider school records not only violates *Cotter* but is also inconsistent with Social Security Ruling 11-2p, and, without indication of whether and how the ALJ considered school records of both cognitive and psychological symptoms, judicial review is impossible and the decision is not supported by substantial evidence.[54]

### *Adequate evidence of the ALJ's weighing of evidence on the "interact with others" area of Criteria "B".*

On the "interact with others" area of Criteria "B", Ms. Hindsman argues the ALJ cherry-picked evidence and failed to account for the practical effects of Ms. Hindsman's limitations showing her symptoms so severe as to interfere with her ability to work and keep herself and those around her safe. Ms. Hindsman points to her hearing testimony regarding conflicts with others in previous attempts at work; records from the treating mental health provider showing incidents of anger put herself and others at risk of harm including a fist fight with her mother and

9

punching walls when angry, and aggressive behavior resulting in incarceration for assault. Ms. Hindsman argues despite this "compelling" evidence, the ALJ nevertheless concluded she "has had meaningful relationships with others" but provided no citation or specifics about the relationships to which she referred and the record contains no support for this conclusion. Ms. Hindsman objects to the ALJ's citation to Ms. Hindsman's characterization of her family relationship as "okay, a little shaky" as only supporting her contention she has a limitation in her interaction with others. Ms. Hindsman challenges the ALJ's explanation for her finding at step two of only moderate limitations.

### *The ALJ's treatment of school records and weighing of evidence is proper.*

We find no *Cotter* violation in the ALJ's treatment of school records. Following *Cotter*, our court of appeals in *Burnett v. Comm'r of Soc. Sec. Admin.* held an ALJ must identify the reasons for her decision because "a bare conclusion is beyond meaningful judicial review."[55] As our court of appeals later explained, "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting [her] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful judicial review."[56] "An ALJ has an obligation 'to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits.'"[57] In her decision, an ALJ must provide "not only an expression of the evidence [she] considered which supports the result, but also some indication of the evidence which was rejected."[58] "The ALJ's duty to develop the record does not require, however, that the ALJ refer to every piece of evidence submitted."[59] An ALJ may weigh the credibility of evidence, but she "must give some indication of the evidence that [she] rejects and [her] reason(s) for discounting that evidence."[60] We give substantial deference to the ALJ's assessment of credibility.[61]

10

Our analysis confirms ALJ Morales-Rosa studied Ms. Hindsman's diagnosis of a learning disorder and borderline intellectual functioning and noted Ms. Hindsman received special education services.[62] ALJ Morales-Rosa considered the 2006 school-prepared reevaluation report, referring to Ms. Hindsman's special education services received in school and a diagnosed learning disability.[63] The ALJ referred to the diagnosis of borderline intellectual functioning while in school.[64] Judge Heffley noted Ms. Hindsman's challenge to the ALJ's treatment of school records is confined almost entirely to the ALJ's discussion at step two and ignores the extensive, detailed discussion of Ms. Hindsman's mental abilities at step four of the analysis. The ALJ is required to sufficiently develop the record and provide an explanation of her findings to permit meaningful review.[65] The location of the discussion in the ALJ's decision does not affect its adequacy.[66]

The ALJ discussed Ms. Hindsman's testimony, including her testimony of her troubled history in jobs she attributed to her temper, frustration and anger around other people, and function reports completed by Ms. Hindsman and her grandmother.[67] The ALJ found Ms. Hindsman's medically determinable impairments could reasonably be expected to produce many of her alleged symptoms, but found Ms. Hindsman's statements regarding the intensity, duration, and limiting effect of her symptoms inconsistent with the evidence.[68]

ALJ's final decision and her findings of fact are supported by substantial evidence. ALJ Morales-Rosa's decision properly reviewed relevant evidence regarding Ms. Hindsman's cognitive functioning and is supported by substantial evidence. The ALJ thoroughly discussed a January 3, 2011 clinical psychological disability evaluation and individual intellectual evaluation for disability conducted by consultant Charles Johnson, Psy.D.[69] The ALJ discussed Dr. Johnson's administration of a Wechsler Adult Intelligence Scale-IV test yielding a full-scale IQ

11

of 80, placing Ms. Hindsman's intellectual performance within the low-average classification.[70] The ALJ also considered Ms. Hindsman's mental health treatment records from 2011 through the present reflecting diagnoses of mood disorder, bipolar disorder, borderline personality disorder, and post-traumatic stress disorder, and mental health therapy notes from Northwestern Human Services as of March 2011 showing the same diagnoses and including possibly depressive disorder.[71]

The ALJ discussed records from Northwestern Human Services from 2011 to July 2013, noting Ms. Hindsman's reports of being depressed, angry, and experiencing trouble getting along with others.[72] The ALJ noted Ms. Hindsman's reports of eviction from her living situation because she could not get along with her housemates, frequent arguing, stressors such as deaths in her family, and a history of acting out with violent outbursts such as punching walls, breaking her cell phone when angry, and throwing a phone at her boyfriend.[73]  Despite these reports, a mental status exam showed Ms. Hindsman oriented; appeared neat, clean, and appropriate; cooperative behavior; angry, frustrated, and depressed mood; an appropriate and calm affect; appropriate thought content with no evidence of psychosis; logical, oriented and goal-directed thought processes; coherent speech; fair judgment; fair insight; and no evidence of impairment in concentration and attention.[74]

Ms. Hindsman's mental health treatment provider at Northwestern Human Services prescribed medication to treat mood disorder and possibly bipolar disorder and recurrent depression.[75]  ALJ Morales-Rosa discussed treatment records from her primary care provider and Northwestern Human Services documenting Ms. Hindsman's report of mood swings, difficulty management anger, and legal difficulties, her failure to take psychiatric medication since June 2012 while a mental status exam found her alert; oriented; neat and clean in appearance;

12

cooperative and restless in behavior; but anxious in mood; appropriate thought content; local, organized, and goal-directed thought processes; appropriate in perceptions; and fair judgment and insight.[76] The ALJ discussed the medical record showing Ms. Hindsman attended therapy appointments for one month, but the provider discharged her from therapy in July 2013.[77]

ALJ Morales-Rosa reviewed the records from Northwestern Human Services where she returned for treatment in November 2013.[78] At that time, Ms. Hindsman reported angry feelings; moodiness affirmative responses to almost all symptoms of manic behavior; denied depression and psychosis; reported nightmares and flashbacks; and failure to take psychiatric medications since March-April 2013.[79] A mental status exam showed Ms. Hindsman alert; oriented; neat, clean, and appropriate appearance; appropriate and calm affect; appropriate thought content; logical, organized, and goal-oriented thought processes; appropriate perceptions; normal and coherent speech; fair judgment and insight; and no evidence of impairment in concentration or attention.[80] Northwestern Human Services diagnosed Ms. Hindsman at that time with bipolar disorder and post-traumatic stress disorder.[81]

ALJ Morales-Rosa reviewed April 2014 and 2015 treatment notes from Northwestern Human Services showing Ms. Hindsman missed over half of her appointments for treatment from October 2013 to April 2014 and records from April 2015 when Ms. Hindsman again reported symptoms including anger, depression, a bad temper, anxiety and panic attacks but with a mental status exam with findings similar to previous exams but with agitated behavior; anxious, irritable, and depressed mood.[82]

ALJ Morales-Rosa considered the opinions of state agency reviewing psychologists Louis Poloni, Ph.D. and James Cunningham, Ed.D. Dr. Poloni conducted a mental RFC assessment on January 11, 2011.[83] Dr. Poloni found Ms. Hindsman either not significantly

limited or moderately limited in understanding and memory; sustained concentration and persistence; social interaction; and adaptation.[84] Dr. Poloni found while Ms. Hindsman is incapable of understanding and remembering complex or detailed instruction, this would not significantly restrict her ability to function in a work setting, and found she is capable of working within a work schedule and at a consistent pace; making simple decisions; carrying out very short and simple instructions; maintaining regular attendance; would not require special supervision to sustain a work routine; could be expected to complete a normal workweek without exacerbation of psychological symptoms; and able to make simple decisions.[85]

Dr. Cunningham conducted a mental RFC assessment on May 5, 2011.[86] Dr. Cunningham's assessment similarly found no significant limitations and moderate limitations in the categories of understanding and memory, sustained concentration and persistence, social interaction, and adaptation, with a finding of no evidence of limitations in some subsections of sustained concentration and persistence and social interaction.[87] Dr. Cunningham similarly found while Ms. Hindsman's ability to understand and remember complex or detailed instruction is limited, she is able to understand and remember simple one and two step instructions and can perform simple, routine, repetitive work in a stable environment; make simple decisions; carry out very short and simple instructions; and exercise appropriate judgment in the workplace.[88] Dr. Cunningham diagnosed Ms. Hindsman with a learning disability, mood disorder, and borderline intellectual functioning.[89]

Nicole O'Neill Young, Psy.D. examined Ms. Hindsman in September 2015.[90] Dr. Young noted Ms. Hindsman's complaints of manic symptomatology including episodes of anger outbursts lasting approximately two weeks at a time; irritable, shaky, and nervous mood; decreased sleep; distractibility; aggression; depressive episodes; and anxiety, but denied

14

symptoms of panic, thought disorder, or cognitive deficits.[91]  On a mental status exam, Dr. Young reported irritable demeanor and poor manner of relating; well-groomed; fluent and clear speech; coherent and goal-directed thought processes; appropriate affect; neutral mood; and oriented.[92]  Dr. Young found Ms. Hindsman alert and oriented; full range of affect and appropriate in speech and thought content; neutral mood; attention and concentration and memory skills mildly impaired; cognitive functioning below average; and fair insight and judgment.[93]  Dr. Young diagnosed Ms. Hindsman with bipolar disorder.[94]  ALJ Morales-Rosa considered further treatment notes from Northwestern Human Services through early 2017 including multiple mental status examinations showing generally normal findings despite Ms. Hindsman's reported symptoms such as anger, anxiety, panic, and aggression.[95]  The ALJ recognized a June 2015 mental status report showed poor insight and judgment, a departure from previous findings of fair insight and judgment.[96]  ALJ Morales-Rosa recognized the poor evaluation in the insight and judgment areas, but found while the poor findings may suggest a temporary exacerbation of symptoms, the trend in the examinations indicates Ms. Hindsman generally functions adequately.[97]

ALJ Morales-Rosa additionally acknowledged a range of global assessment functioning ("GAF") scores, some which might suggest mental limitations of greater severity while others are more consistent with mental limitations of mild to moderate severity. The ALJ considered the GAF scores and explained why they are not dispositive of impairment severity or the ability to meet the mental demands of work, and explained why she gave GAF scores only limited weight.[98]

Based on all this evidence, the ALJ concluded the medical evidence does not fully support Ms. Hindsman's testimony she experiences symptoms and limitations preventing her

15

from work. ALJ Morales-Rosa gave great weight to Dr. Young's testimony as generally consistent with the record as a whole. Dr. Young's assessment, as Judge Heffley found, is the most limiting of Ms. Hindsman's cognitive abilities; that is, Dr. Young's assessment found more restrictions on Ms. Hindsman's abilities than the assessments of Dr. Poloni and Dr. Cunningham. The ALJ gave only partial weight to the opinions of Dr. Poloni and Dr. Cunningham.[99]  The ALJ found Dr. Young's assessment supports a limitation to work involving only simple, routine tasks with restrictions on interactions with others, particularly the public.[100]  The ALJ's decision Ms. Hindsman is not disabled is supported by substantial evidence.

### *The ALJ correctly defined the "adapt or manage oneself" area of Criteria "B".*

Ms. Hindsman also argues the ALJ's decision errs because she incorrectly defined "adapt or manage oneself." Ms. Hindsman argues the ALJ restricted her discussion to limitations in the ability to adapt or manage oneself in the context of basic daily activities without acknowledging difficulties in regulating emotions or controlling behavior.

The relevant Social Security regulation regarding the "adapt or manage oneself" area in Criteria "B" provides:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.[101]

Applying a *de novo* review, we disagree with Ms. Hindsman's objection. For largely the same reasons discussed above, ALJ Morales-Rosa considered Ms. Hindsman's testimony regarding her difficulty in controlling her emotions causing problems in work, but found Ms.

Hindsman's reports inconsistent with the medical evidence. We disagree the record evidence shows "at least marked limitations" in the ability to adapt or manage oneself. In support of the "marked limitations" argument, Ms. Hindsman cites records from Northwestern Human Services. However, the ALJ considered these records and explained why she found inconsistencies between Ms. Hindsman's reports and mental status examination. For example, the ALJ explained while the Northwestern Human Services records show Ms. Hindsman reporting her symptoms of anger, aggression, depression, anxiety and panic attacks, mental status examinations found her alert, oriented, neat, clean, and appropriate in appearance, cooperative, guarded, and agitated in behavior, mood anxious, irritable, depressed, but appropriate in affect, thought content, logical and organized thought processes, appropriate perceptions, normal and coherent speech, fair in judgment and insight, and no impairment/good concentration and attention.[102]

## 2. The hypothetical to the vocational expert adequately accounted for Ms. Hindsman's limitations in concentration, persistence, or pace.

Ms. Hindsman next objects to Judge Heffley's analysis of the ALJ's hypothetical to vocational expert Patricia Scutt, arguing the hypothetical did not account for limitations in Ms. Hindsman's concentration, persistence, or pace as supported by the evidence. We disagree with Ms. Hindsman but not for the reasons cited by Judge Heffley.

ALJ Morales-Rosa posed three hypotheticals to the vocational expert. In the first hypothetical, the ALJ asked whether an individual the same age as Ms. Hindsman, with no exertional limitations, only non-exertional for simple and routine tasks, simple work-related decisions, frequent contact with supervisors, co-workers, and the public could perform any work in the national economy.[103] Vocational expert Scutt testified such an individual could perform jobs as a hand packer, bakery racker, and artificial flower sticker.[104] For the second hypothetical,

the ALJ asked whether an individual with the same assumptions as hypothetical one, except the person can never have contact with the public and occasionally with supervisors and co-workers, could perform the jobs identified.[105] Vocational expert Scutt testified the person in the second hypothetical could perform the same jobs as identified in response to the first hypothetical.[106]

In the third hypothetical, the ALJ asked whether a person with the same assumptions as the second hypothetical plus the person will be off-task twenty percent of a normal workday could perform the identified jobs.[107] Vocational expert Scutt testified a person with the assumptions in the third hypothetical could *not* perform the jobs identified in the first and second hypothetical.[108]

Ms. Hindsman's objection is based on hypotheticals one and two, arguing the ALJ did not include all limitations supported by the evidence. Ms. Hindsman contends because the ALJ found "moderate limitations" in concentration, persistence, or pace her hypothetical limiting Ms. Hindsman to simple and routine tasks and simple work-related decisions "does not come close" to addressing Ms. Hindsman's limitations in concentration, persistence, or pace. She argues our court of appeals' decision in *Ramirez v. Barnhart*[109] requires, as a matter of law, moderate limitations in concentration, persistence, or pace must be explicitly included in the hypothetical posed to a vocational expert and simply limiting a claimant to unskilled tasks is inadequate.

Ms. Hindsman's argument misses the mark. Judge Heffley appears to have also partially missed the import of the third hypothetical, regardless of how we interpret the first two hypotheticals. The ALJ's third hypothetical specifically incorporated limitations relating to concentration, persistence, or pace by including an assumption an individual will be off-task twenty percent of a normal work day. Ms. Hindsman concedes the third hypothetical properly incorporated her limitations in concentration, persistence, or pace "through the restriction

18

regarding time off task, clearly distinguishing it from the earlier hypothetical that failed to account for that limitation."[110]

Ms. Hindsman's objection is really to the ALJ's decision the record supports the second hypothetical; an individual the same age as Ms. Hindsman, with no exertional limitations, only non-exertional for simple and routine tasks, simple work-related decisions who can never have contact with the public and occasionally with supervisors and co-workers. The ALJ chose not to credit the third hypothetical, explaining at the hearing why she did not allow Ms. Hindsman's counsel to inject a "marked" limitation into the hypothetical:

> Because the problem is if you're using a form that you saw in the file, those are somebody [sic] conclusions. These are not the limitations that can be translated. That's why we have to come up with simple routine tasks. We have to come up with simple work-related decisions, which is what I already did. ***And the 20 percent off task, if I were to believe that [Ms. Hindsman] is as disabled as you are claiming here, then I will go with hypothetical three.*** But, you know, I'm not saying what I'm deciding.[111]

This is a credibility determination. The ALJ also explained why she discredited Ms. Hindsman's self-reported symptoms, finding while Ms. Hindsman's "medically determinable impairments could reasonably be expected to produce many of her alleged symptoms . . . her own statements concerning the intensity, duration and limiting effects of these symptoms are not fully consistent with the evidence."[112] The ALJ then explained why the medical evidence is not consistent with Ms. Hindsman's testimony.[113]

We overrule Ms. Hindsman's objection on the hypothetical question to the vocational expert. The ALJ asked the hypothetical. But as she previewed in asking the third hypothetical, she did not find the fact basis for this third hypothetical to be valid. Regardless of how we interpret the first two hypotheticals, ALJ Morales-Rose's third hypothetical addressed the limitation.

### 3. The ALJ did not violate Social Security Ruling 11-2p.

Ms. Hindsman complains, as she does in her first objection, the ALJ violated Social Security Ruling 11-2p. Ms. Hindsman makes two objections to Judge Heffley's Report and Recommendation: (1) the report and recommendation's finding the ALJ is not required to discuss school records is in direct conflict with Social Security regulations and SSR 11-2p; (2) the report and recommendation incorrectly found the ALJ met her obligation to consider school records.

At issue here is Social Security Ruling 11-2p (the "Ruling" or "SSR 11-2p"). It explains the Agency's policy on documenting and evaluating disability in young adults.[114] When the Agency has evidence from an "acceptable medical source that establishes the existence of at least one medically determinable impairment,"[115] it will consider "all relevant evidence in the case record to determine whether a young adult is disabled," including school records, and "although [it] always need[s] evidence from an acceptable medical source, [it] will determine what other evidence [it] need[s] based on the facts of the case."[116] The Ruling directs evidence from school programs "can also help [the Commissioner] evaluate the severity and impact of a young adult's impairment(s)."[117]

Ms. Hindsman first objects to the portion of Judge Heffley's Report and Recommendation rejecting her mischaracterization of the language of the Ruling. Ms. Hindsman interprets the report and recommendation as finding the Ruling an optional consideration by the ALJ. Ms. Hindsman contends the Policy requires the ALJ consider school records and include all limitations supported by the evidence in the decision. We disagree with Ms. Hindsman's interpretation of the report and recommendation.

Judge Heffley cites *McCarl v. Colvin*[118] regarding the operation of the Ruling. In

20

*McCarl*, the court discussed the Ruling as providing guidance on how the agency evaluates disability in young adults. The court found while the Ruling provides guidance, "it does not mandate a finding a disability merely because such records exists and/or demonstrate limitations."[119] We do not read the report and recommendation to mean the Ruling is optional; having cited *McCarl*, we read the report and recommendation to reject Ms. Hindsman's argument *because* school records exist, SSR 11-2p *mandates* a finding of disability. As the court found in *McCarl*, the Ruling does not require a finding of disability; the Ruling simply provides the Agency's position non-medical evidence such as school records are considered when evaluating the severity and impact of a young adult's impairments. Ms. Hindsman's objection does not address *McCarl*.

Ms. Hindsman next objects to Judge Heffley's finding the ALJ met her obligation to consider school records. As we found, ALJ Morales-Rosa recognized the school records documenting special education services and a diagnosis of learning disorder and borderline intellectual functioning. Although Ms. Hindsman concedes the ALJ noted the school records show special education services and a diagnosis of a learning disorder, she argues the ALJ failed to explain the functional limitations of these diagnoses. She also argues without any explanation about the specific limitations caused by her impairments, it is impossible to know whether the ALJ considered the functional effects of the limitations. Ms. Hindsman cites SSR 11-2p's "Extra Help and Accommodations" section. There, the Agency considers "how independently a young adult is able to function, including whether the young adult needs help from other people or special equipment, devices, or medications to perform day-to-day activities. If a young adult can function only if he or she receives more help than would generally be provided to people without medical impairments, [the Agency] consider[s] how well the young adult would function without

21

the extra help."[120]

Ms. Hindsman argues because the ALJ noted special education services, without explaining the type or extent of services, the ALJ failed to satisfy the requirement to consider how Ms. Hindsman would be expected to function without extra help and accommodation. Ms. Hindsman points to her 2010 IEP showing modifications and specially designed instruction in the form of small group testing, simplified directions, and small group instruction.[121] She argues even with modifications in place, she received failing grades.[122]

We disagree with Ms. Hindsman's argument. First, she does not explain how school modifications – small group testing, simplified directions, and small group instruction – is inconsistent with the RFC found by the ALJ. The ALJ considered the diagnoses evidenced in school records as reflected in the RFC, restricting Ms. Hindsman to performing simple, routine tasks and limited to making simple work-related decisions, with occasional interaction with supervisors and co-workers, but never with the public.[123] The ALJ explained she considered the evidence of record and found Ms. Hindsman's statements concerning the intensity, duration, and limiting effects of her symptoms "are not fully consistent with the evidence." We find the ALJ's decision supported by substantial evidence in the record, and accordingly, deny Ms. Hindsman's objection.

### III. Conclusion

In the accompanying Order, we approve and adopt Judge Heffley's Report and Recommendation on all grounds except on slightly different grounds on the hypothetical posed to the vocational expert. We deny Ms. Hindsman's request for review and enter judgment in favor of the Commissioner.

22

[1] Nancy A. Berryhill served as the Acting Commissioner of the Social Security Administration when the Administrative Law Judge issued her April 13, 2017 final decision. The Administration's website currently lists Ms. Berryhill as the Acting Commissioner. Under the Federal Vacancies Reform Act of 1998, 5 U.S.C. 3345 *et seq.*, Ms. Berryhill currently serves as the Deputy Commissioner for Operations of the Social Security Administration. While she may not hold the title of the Acting Commissioner today, we refer to Ms. Berryhill as "Commissioner" consistent with her role when she denied Ms. Hindsman disability benefits as an adult.

[2] Administrative Record ("R.") 116.

[3] R. 116.

[4] R. 72.

[5] When a child, defined as "a person who has not attained age 18," receives benefits under Title XVI and reaches age eighteen, she must undergo a disability redetermination. *See* 20 C.F.R. §§ 416.902(c); 416.987.

[6] R. 47.

[7] R. 51.

[8] R. 57- 77. Ms. Hindsman failed to attend the disability hearing on August 23, 2012. R. 57.

[9] R. 25-30; 92-96.

[10] R. 25-30.

[11] R. 31-42.

[12] R. 35-39. Ms. Hindsman waived representation. R. 90.

[13] R. 41. ALJ Fitzpatrick's hypothetical to Dr. Gumerman asked him to assume a twenty-two year old woman with limited education; no past relevant work; no exertional impairments; but some problems concentrating and paying attention with hyperactivity; may have difficulty in completing tasks; no difficulty in performing routine work; and the mental capacity to perform routine, uncomplicated work. R. 40-41

[14] R. 416-430.

[15] R. 431-433.

[16] R. 436-444.

[17] R. 441-444.

[18] R. 465-493.

[19] R. 500-534.

[20] R. 383-415.

[21] R. 359-375.

[22] ECF Doc. No. 18.

[23] ECF Doc. No. 19.

[24] ECF Doc. No. 20.

[25] ECF Doc. No. 22.

[26] 28 U.S.C. § 636(b)(1).

[27] *Id.*

[28] *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

[29] *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005)).

[30] *Id.* (quoting *Rutherford,* 399 F.3d at 552).

[31] *Id.* (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir.1999)).

[32] *Trinh v. Astrue*, 900 F. Supp. 2d 515, 518 (E.D. Pa. 2012) (citing *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001)); *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998) (citing *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987)).

[33] 42 U.S.C. § 1381 *et seq.*

[34] 42 U.S.C. § 423(d)(1)(A); § 1382c(a)(3)(A).

[35] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

[36] *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).

[37] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[38] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of non-disability if claimant is engaged in substantial gainful activity).

[39] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (mandating finding of non-disability if claimant's impairments are not severe).

[40] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[41] *Id.*

[42] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[43] *Fargnoli*, 247 F.3d at 40.

[44] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Plummer*, 186 F.3d at 428.

[45] R. 363.

[46] R. 365.

[47] R. 367.

[48] R. 368.   Ms. Hindsman does not challenge ALJ Morales-Rosa's finding at Criteria "C".

[49] R. 368-372.

[50] R. 373-374.

[51] R. 374.

[52] 642 F.2d 700, 704 (3d Cir. 1981).

[53] R. 264.

[54] We separately address Ms. Hindsman's specific objection to Judge Heffley's finding the ALJ did not violate Social Security Rule 11-2p below.

[55] *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 119-20 (3d Cir. 2000).

[56] *Jones v. Barnhart*, 364 F.3d 501, 505 (citing *Burnett*, 220 F.3d at 120).

[57] *Walker v. Astrue*, 733 F. Supp. 2d 582, 587 (E.D.Pa. 2010) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).

[58] *Walker*, 733 F. Supp. 2d at 587 (quoting *Cotter*, 642 F.2d at 705).

[59] *Id.* (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)); *Phillips v. Barnhart*, 91 F.App'x 775, 780 n. 7 (3d Cir. 2004); *Perry v. Berryhill*, No. 15-4225, 2017 WL 3075075, at *10 (E.D. Pa. July 19, 2017); *Christian v. Colvin*, No. 15-3762, 2017 WL 378485, *12 (E.D. Pa. Jan. 25, 2017).

[60] *Fargnoli*, 247 F.3d at 43 citing *Burnett*, 220 F.3d at 121; *Cotter*, 642 F.2d at 705).

[61] *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citing *Diaz v. Comm'r of Soc. Sec. Admin.*, 577 F.3d 500, 506 (3d Cir. 2009)).

[62] R. 368-373.

[63] R. 365, 370.

[64] R. 365, 370.

[65] *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett* 220 F.3d at 119).

[66] *Cop v. Comm'r of Soc. Sec. Admin.*, 226 F.App'x 203, 208 (3d Cir. 2007).

[67] R. 370.

[68] *Id.*

[69] R. 222-28.

[70] R. 370.

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] R. 370-371.

[75] R. 349.

[76] R. 371; 332-356.

[77] R. 371.

[78] *Id.*

[79] R. 371; R. 1188.

[80] R. 371; 1191.

[81] R. 1193.

[82] R. 808.

[83] R. 373; 245-248; 296-312.

[84] R. 245-246.

[85] R. 247.

[86] R. 296- 312.

[87] R. 296-297.

[88] R. 298.

[89] R. 301-304.

[90] R. 371; 789-797.

[91] R. 371-372; 789-790.

[92] R. 372; 791.

[93] *Id.*

[94] R. 372; 792.

[95] R. 372; 1188-1312.

[96] R. 372; 1285.

[97] R. 372.

[98] R. 372.

[99] R. 373.

[100] *Id.*

[101] 20 C.F.R. § 404, Subpt. P, App.1, § 12.00(E)(4).

[102] R. 371.

[103] R. 407-408.

[104] R. 408.

[105] *Id.*

[106] *Id.*

[107] R. 408-409.

[108] R. 409.

[109] 372 F.3d 546 (3d Cir. 2004).

[110] ECF Doc. No. 20 at 19-20.

[111] R. 413 (emphasis added).

[112] R. 370.

[113] R. 370-371.

[114] SSR 11-2p , 2011 WL 4055665, at *1 (Sept. 12, 2011).

[115] *Id.* at *4 (citing 20 CFR §§ 404.1513(a), 416.913(a)).

[116] *Id.* at *4.

[117] *Id.* at *5.

[118] No. 13-1803, 2015 WL 540067 (W.D. Pa. Feb. 10, 2015).

[119] 2011 WL 4055665, at *4.

[120] *Id.* at *8.

[121] R. 1112-1115.

[122] R. 1071, 1104.

[123] R. 368-372.